ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JOHN C. BOSTIC (CABN 264367)
Assistant United States Attorney

WILLIAM J. MIGLER (CABN 318518)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    John.Bostic@usdoj.gov
    William.Migler@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 23-CR-00085-WHA** |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Sentencing Date: January 29, 2024 |
| JESSE FRANKLIN SWARTZ, | Time: 1:30 PM |
| Defendant. | Courtroom: Courtroom 12, Floor 19 |

U.S. SENTENCING MEMORANDUM
23-CR-00085-WHA

## I. INTRODUCTION

The United States hereby submits its Sentencing Memorandum for the Court's consideration at the upcoming January 29, 2024 sentencing hearing in the above-captioned matter. The government recommends the Court sentence defendant Jesse Swartz to a custodial sentence of one year and a day, to be followed by three years of supervised release. The government further recommends that the Court impose a special condition of supervised release barring Defendant from entering the Philip J. Burton Federal Building and Courthouse, 450 Golden Gate, San Francisco, without first obtaining consent from the Probation Office.

This recommended sentence is appropriate based on all the factors the Court considers at sentencing. A custodial term of one year and a day is at the low end of the applicable Sentencing Guideline range of 12 to 18 months, as conservatively calculated by the Probation Office. It is also commensurate with the seriousness of the offense conduct; Defendant was convicted of a deliberate, violent act against a federal court security officer tasked with protecting court staff and the public.

The recommended sentence is also appropriate in light of the fact that Defendant's attitude and conduct suggests a risk of recidivism. Even following the criminal charge in this case, and more recently after his conviction, Defendant has continued to be hostile toward the Court and other public servants.

Defendant's behavior has not improved since trial. He has repeatedly violated his agreement not to send harassing emails to federal court staff and Department of Justice employees, a portent that suggests he is unlikely to abide his terms of release. A one year and a day custodial sentence will also generally deter other persons from committing similar assaults against federal court security officers and will reassure the men and women who protect the Court and its staff that violence against them will be properly punished.

## II. BACKGROUND

### A. The Offense Conduct

On February 8, 2023, at around 9:05 a.m., Defendant arrived on the 17th floor of 450 Golden Gate, proceeded to District Judge William Orrick's courtroom, and began to loudly bang and pull on the locked courtroom doors. Presentence Investigation Report ("PSR") at ¶ 9. Court Security Officer

("CSO") R.W., who was patrolling the courtroom floors at the time, heard the loud noises and confronted Defendant. *Id.* Defendant began yelling at R.W., ordering him to "bring Judge Orrick out" to meet with Defendant. *Id.* After his attempts to calm Defendant down failed, R.W. stepped away into a side hallway and radioed for assistance. *Id.* at ¶¶ 9-10. R.W. then re-engaged with Defendant, who continued to yell and began insulting and taunting R.W. *Id.* at ¶ 10. R.W. and Defendant continued to interact for several minutes while a number of other CSOs and Federal Protective Services ("FPS") Inspector S.G. responded to the scene. *Id.* at ¶ 11.

A responding CSO indicated that Defendant should be handcuffed and led out of the building, and R.W. told Defendant to turn around to be handcuffed. *Id.* at ¶ 12. At that moment, Defendant took a step forward and forcibly thrust his arms forward, striking R.W. in the chest with both open palms and enough force to knock R.W. backwards off his feet. *Id.* During the ensuing struggle while the CSOs were attempting to pacify the resisting Defendant, the back of Defendant's head struck S.G.'s face, causing a bleeding laceration to S.G.'s brow. *Id.* at ¶ 13. S.G. was taken to a nearby hospital to treat the laceration and to monitor for a possible concussion. *Id.*

Defendant was subsequently charged with one count of assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1). Indictment, ECF No. 27. The evidentiary portion of the trial was held on November 27, 2023. ECF No. 218. The government called two witnesses: CSOs R.W. and H.K., who testified to the facts above. Tr. Nov. 27, 2023, ECF No. 232, at 42:6-44:3 and 72:19-24.

At trial, the government introduced Exhibit 28, a six-minute split-screen video clip from the courtroom hallway surveillance cameras depicting R.W.'s interaction with Defendant. *Id.*, at 45:1-25. That footage showed Defendant stepping forward and quickly thrusting his arms forward, sharply striking R.W. in the chest, and knocking R.W. backward onto the bench behind him. *Id.*, at 51:20-23. In addition, the trial evidence included testimony from Defendant admitting that he deliberately shoved R.W. and that it was a "calculated" decision on his part. *Id.*, at 88:14-20, 92:24-93:1, 93:15-17.

On November 27, 2023, the jury returned a guilty verdict on the single charged count of assault on a federal officer. ECF No. 220.

**B.  Defendant's Personal and Criminal History**

Defendant's formative years seem to have been stable and conducive to the successes he

achieved early in his life.  According to his father, Defendant was a star athlete in high school and excelled academically in high school and college.  PSR at ¶ 55.  After graduation, Defendant found employment in the technology industry and married a woman he met in college.  *Id.*  At some point, though, Defendant lost his job and his wife filed for divorce.  *Id.*  Defendant then began to "lash[] out" at his family members and developed paranoid beliefs.  *Id.* at ¶ 56.  His parents attempted to help Defendant and purchased a house in Ohio for him to reside in, but he spurned the assistance and moved away, seemingly first to Chicago, Illinois, where he sustained his first criminal conviction for misdemeanor resisting arrest and obstructing a police officer in January 2007.  *Id.* at ¶¶ 31, 56.

Defendant's second criminal conviction occurred in March 2015, when Defendant was convicted of disobeying a lawful order and trespassing in the law library in the Ninth Circuit Court of Appeals courthouse.  In that incident, he refused officers' instructions to leave after engaging in disruptive behavior.  *Id.* at ¶ 32; *see also United States v. Swartz*, 15-CR-00351 TSH (N.D. Cal.), Amended Findings of Fact as to Jesse Swartz, ECF No. 16, at 2.  At the trial in front of a U.S. Magistrate Judge, Defendant was removed from the courtroom due to his disruptive behavior; he had argued with the Magistrate Judge in a confrontational manner, repeatedly interrupted her, and urged her to hold him in contempt.  15-CR-00351 TSH (N.D. Cal.), ECF No. 16 at 10.

The rest of Defendant's criminal history prior to the instant offense consists of at least 14 arrests and/or citations for petty offenses and antisocial behavior, such as disorderly conduct, trespassing, public intoxication, and disturbing the peace.  PSR at ¶¶ 35-49.  In other words, the offense conduct in this case was not out of character for Defendant, but rather part of a troubling pattern of problematic behavior.

### C. Defendant's Pretrial Conduct

On February 9, 2023, the United States filed a criminal complaint charging Defendant with a violation of 18 U.S.C. § 111(a)(1).  ECF No. 1.  Thereafter, Defendant proceeded to fill this Court's and the Ninth Circuit Court of Appeal's docket with voluminous, frivolous, and incoherent filings which often contained inflammatory and derogatory comments about the Court, court staff, and defense and government counsel.  The United States previously detailed a number of Defendant's filings in its motion for a mental competency evaluation, and incorporates that review by reference here.  *See* ECF

No. 150 at 6-10.

Notably, the Court struck several of these filings from the record because of their inappropriate contents, such as a March 23, 2023 filing regarding a U.S. Magistrate, *see* ECF Nos. 24, 35, and an August 28, 2023 filing which consisted of an email Defendant sent to another U.S. Magistrate's courtroom deputy wherein he threatened to slap an AUSA assigned to the case and kick his appointed counsel. *See* ECF Nos. 158, 159. On August 30, 2023, just two days after sending this threatening email, Defendant served an assigned AUSA with a frivolous and baseless California state civil lawsuit accusing her, his appointed trial counsel, and his other previously appointed counsel of harassing and defaming him. The lawsuit was later dismissed due to Defendant's vexatious litigant status. *See* ECF No. 160 at 3:9-12. The Court correspondingly found that the August 28, 2023 email and the filing of the frivolous lawsuit constituted threats and harassment against the AUSA which were violations of Defendant's pretrial release conditions, and remanded Defendant into custody pending trial. *See* ECF No. 163.

The Court is familiar with Defendant's disruptive courtroom behavior and insulting comments directed to both the bench and counsel—behavior which required Defendant to be removed from the courtroom on several occasions. *See e.g.,* ECF No. 215, at 12:9-25; 19:3-17 (Defendant, while being escorted out of the courtroom, ordering the Court to "stand up and disrobe" because Defendant had "impeached" the Court).

### D.     Defendant's Post-Trial Conduct

On November 27, 2023, following the guilty verdict, the defense moved for Defendant's release pending sentencing. ECF No. 218. The Court released Defendant provided that he sign, and abide by, an agreement with the government wherein he would not, among other things, "[d]irect any harassing emails, phone calls, letters, or other communications to any [person associated with the federal court for the Northern District of California and person associated with the United States Department of Justice]." ECF No. 221.

On November 29, 2023, less than 48 hours after signing this agreement and being released, Defendant emailed the Chief Deputy of the United States Marshal Service for the Northern District of California, and another AUSA to complain about his time in custody. Defendant then sent four emails

U.S. SENTENCING MEMORANDUM
23-CR-00085-WHA                                                4

in a 24-hour span between December 8 and 9, 2023 to the Chief Deputy of the Marshals Service and the AUSA Waldinger, commenting on what he believes were errors at his trial and alluding to fleeing to Canada to evade sentencing.  Defendant continued to send further emails to the Chief Deputy of the Marshals Service and the AUSA on December 14, 21, 28, 2023, and January 2, 2024.  These mostly related to Defendant sharing post-trial motions he authored and complaining about the contents of the PSR.

### III.     THE UNITED STATES' RECOMMENDED SENTENCE

The government recommends the Court impose the following sentence: a term of one year and a day in custody, a supervised release term of 3 years, and a special condition of supervised release that Defendant be barred from entering 450 Golden Gate during the term of supervised release without first obtaining consent of the Probation Office.

As established below, this recommended sentence is the low end of the applicable Guideline range and adequately meets the considerations laid out in 18 U.S.C. § 3553(a).

#### A.     Applicable Guideline Range

The United States Probation Office found Defendant's base offense level to be 10.  PSR at ¶ 20.  It found that a 3-level upward adjustment was applicable under U.S.S.G. § 2A2.4(b)(1)(A) because the offense involved physical contact with the victim, and accordingly found Defendant's total offense level is **13**.  *Id.* at ¶ 21.  The Probation Office further found that Defendant's Criminal History Category is **I**.  *Id.* at ¶ 34.  This yields a Guideline range as follows:

Custody: 12 to 18 months (PSR at ¶ 69);

Supervised release: 1 to 3 years (*Id.* at ¶ 71); and

Fine: $5,000 to $55,000 (*Id.* at ¶ 76)

The government believes that a further 2-level upward adjustment should be made to account for the bodily injury—the bleeding laceration—FPS Inspector S.G. sustained as a result of Defendant resisting arrest after he assaulted R.W., pursuant to U.S.S.G. § 2A2.4(b)(2).  This would bring Defendant's total offense level to 15, which would yield a Guideline range of 18 to 24 months in custody.  Probation's response to the government's position is set forth in the PSR.  *See* Addendum to PSR at ¶¶ 2-3.

The Court need not resolve this dispute, because the government's recommended custodial sentence of one year and a day is at the low end of the Guideline range as calculated by the Probation Office. The fact that Defendant's conduct resulted in an injury to a federal officer counsels against a sentence of time served regardless of how the Guidelines are calculated.

**B.     18 U.S.C. § 3553(a) Considerations**

The government's recommended sentence is also consistent with the factors in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 38-39 (2007).

These factors militate in favor of the government's recommended sentence.

*1.     Nature and Seriousness of the Offense*

In convicting Defendant, the jury found beyond a reasonable doubt that he committed a "forcible assault," an "intentional striking," against R.W. Defendant himself admitted that it was a "calculated" decision to shove R.W. because he wanted to be arrested and charged with a felony. Tr. Nov. 27, 2023, ECF No. 232, at 93:15-17.

This "calculated" assault was directed at a Court Security Officer, whose job it is to keep the judges, court staff, and members of the public safe inside the courthouse. R.W. was only doing his duty when he confronted the obstreperous Defendant outside Judge Orrick's courtroom. Defendant responded to R.W.'s reasonable response with yelling, insults, and then ultimately assaulting him. Moreover, Defendant's actions directly resulted in FPS Inspector S.G. receiving a bleeding laceration while he and the CSOs were trying to subdue the resisting Defendant.

Defendant's conduct also posed a risk to the wellbeing of other individuals in the federal courthouse that day. The altercation caused by Defendant occurred near a courtroom that was being used at the time for a jury trial. The offense also took place near the Probation Office's open door, and the surveillance footage showed that other courthouse staff and members of the public were in the hallway.

In sum, the offense conduct was a violent act against a federal court employee occurring inside the federal courthouse while federal court proceedings were being conducted. The Court should not tolerate deliberate acts of violence on court security staff inside its courthouse. The nature of the offense warrants a sentence to additional time in custody above the time Defendant has already served.

### 2. *History and Characteristics of the Defendant*

There is nothing in Defendant's background and characteristics that excuses the offense conduct or the aggressive and hostile behavior he has exhibited during this case. He has been frequently rude and disruptive to court staff members and contemptuous of authority. Most egregious was his conduct toward an assigned AUSA, threatening to slap her and then further harassing her by filing and serving her with a frivolous and baseless lawsuit.

The government previously expressed concern regarding Defendant's competence to stand trial in light of his continued disruptive behavior and apparent inability to restrain himself. Defendant, however, has actively resisted measures that could have identified and treated any mental health condition. He defied the Court's previous order to submit to a mental evaluation and refused Pretrial Services' offer for mental health treatment. Notably, during trial, Defendant largely refrained from disruptive behavior when the jury was present, demonstrating that he does in fact have the ability to regulate his conduct.

Lastly, nothing post-trial indicates that Defendant has turned a new leaf. Defendant has repeatedly violated his agreement with the government by frequently emailing personal grievance emails to federal court staff and Department of Justice employees, with the first coming less than 48 hours after he signed the agreement and was released from custody. This indicates that he will not comply with the terms of his supervised release if they are not coupled with a firm custodial component.

### 3. *Need for General and Specific Deterrence*

The government's recommended sentence will serve as adequate general and specific deterrence against similar conduct. A custodial sentence of one year and a day would serve as ample warning to others who would repeat Defendant's act of disobeying and then physically assaulting a federal court security officer. It is a warning that the federal courts will not abide assaults on members of its security staff inside the courthouse.

A year and a day sentence will also send a message to this specific Defendant that his actions have consequences and that he should avoid similar violent conduct in the future. Defendant has spent less than three months in custody so far, and the fact that he continues to send harassing messages to court and government employees suggests that he does not recognize the wrongfulness of his actions. A

longer custodial sentence is more likely to meet the goal of deterrence against repeating this behavior.

## IV. NO VARIANCE FROM A GUIDELINE RANGE SENTENCE IS WARRANTED

All of the above demonstrates why the government's recommended sentence for a custody term of one year and a day is the appropriate sentence here. The Probation Office recommends that Defendant receive a sentence of time served. *See* Sentence Recommendation, ECF No. 238, at 25-26. The Probation Office grounds this recommendation on the belief that Defendant "has shown that he is not a threat to the public based on his compliance with his release conditions." *Id.* at 26.

The government respectfully disagrees. Defendant has already demonstrated his willingness to engage in violence by assaulting a federal officer, and he has threatened further violence against government counsel and his appointed counsel. The latter conduct caused the Court to remand Defendant into custody because he represented a risk of further violence and because Defendant's actions were clear violations of his pretrial release conditions. Defendant's behavior throughout the case raises concerns that he will not abide by supervised release conditions, as he has already violated his post-trial agreement not to harass court staff and employees of the Department of Justice.

Moreover, a sentence of 81 days in custody equates to a 5-level downward variance from the Guideline range of 12 to 18 months, dropping from the total offense level of 13 down to offense level of 8. There is nothing in the offense conduct nor in Defendant's character or history that warrants such a downward variance.

Lastly, an 81-day sentence is exceptionally low compared to the average sentence for similarly situated defendants. According to the latest available Judiciary Sentencing Information (JSIN), between 2018 and 2022, the average sentence across 125 defendants under the applicable Sentencing Guideline provision here (U.S.S.G. § 2A2.4) was 10 months. PSR at ¶ 85. This Defendant, who committed a "calculated" act of violence against a federal security officer inside a federal courthouse, should not receive a 70 percent discount from this 10-month average.

## V. CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court impose the following sentence: a term of one year and a day in custody, a supervised release term of 3 years, and a special condition of supervised release that Defendant be barred from entering 450 Golden Gate during the term of supervised release without first obtaining consent of the Probation Office.

DATED: January 22, 2024                             Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
WILLIAM J. MIGLER
Special Assistant United States Attorney

JOHN C. BOSTIC
Assistant United States Attorney